FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAY 24 AM 9:24

LORETTA G. WHYTE
CLERK

**MINUTE ENTRY**
**DUVAL, J.**
**May 23, 2002**

## UNITES STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARABELLA BUS BARN, LLC, ROGER OGDEN, and DARRYL BERGER | CIVIL ACTION |
| VERSUS | No. 01-3806 |
| WHOLE FOODS MARKET, INC., WHOLE FOODS MARKET SOUTHWEST, SARPY PROPERTIES, LLC, and SPECIALTY REALTY DEVELOPMENT | SECTION "K" |

Before this Court is plaintiff's Motion to Remand (rec. doc. 5). The underlying dispute in this matter arises from the development of the historic Arabella Streetcar Facility in New Orleans (the "Bus Barn"). Plaintiffs (collectively referred to herein as "Arabella") are residents of Louisiana. Defendants, Sarpy Properties, L.L.C. and Specialty Realty Development, L.L.C., maintain their principal places of business in Louisiana. Defendants, Whole Food Market, Inc. and Whole Foods Market Southwest, L.P. (collectively referred to herein as "Whole Foods") are Texas entities and not licensed to do business in Louisiana. .

DATE OF ENTRY
MAY 2 4 2002



Plaintiffs filed suit against the named defendants on November 20, 2001 in New Orleans Civil District Court alleging a myriad of claims including: (1) violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, ("the Act" or "LUTPA"), (2) breach of contract, (3) unjust enrichment and (4) tortious interference with contract. Defendants timely filed their Notice of Removal on December 19, 2001 and plaintiff's thereafter filed the instant motion to remand. After reviewing the pleadings and relevant law, the Court finds that plaintiff's Motion to Remand should be **GRANTED.**

## Background

The Regional Transit Authority ("RTA") is the owner of the historic Arabella Streetcar Facility in Uptown New Orleans. When the RTA stopped using the Bus Barn for transit related activities, it expressed an interest in leasing it. Thereafter, Darryl Berger and Roger Ogden sought to acquire the right to develop the property and formed Arabella Bus Barn, L.L.C. for this purpose. As a part of their plan to redevelop the property, Arabella proposed the inclusion of an upscale supermarket and contacted Whole Foods Market, Inc. and Whole Foods Market Southwest, L.P. in May 1997 in hopes of securing them as an anchor tenant. Plaintiff's Petition ¶¶ 9-15.

After a series of discussions, Whole Foods sent a Letter of Intent to Arabella, dated March 2, 1998, which expressed its desire to lease a portion of the Bus Barn to operate a Whole Foods store. Whole Foods sent a subsequent Letter of Intent on March 9, 1998 and included an exclusivity provision that bound both parties "to exclusively work with one another to secure a Whole Foods Market Store in the above location [Bus Barn]."[1] The exclusivity agreement was to "remain in effect

---

[1] See Affidavit of Lee Valkenarr, Exhibit A, which is attached as Exhibit 1 to Defendants' Memorandum.

for a period of twelve months from the date hereof [March 9, 1999] and" was to be "automatically extended for up to an additional twelve months [March 9, 2000] provided that the public process to acquire this site" was in progress. The Letter of Intent was accepted by plaintiffs on March 10, 1998. Plaintiff's Petition ¶¶ 16-18. Thereafter, Whole Foods actively participated with Arabella in its preparations to lease the Bus Barn -- including the financial analyses, architectural developments, zoning and government approval processes, historical research, traffic studies, site plan developments, and engineering reviews.

In Fall 1999, the RTA issued its formal Request for Proposals ("RFP") requesting sealed responses from qualified firms interested in redeveloping the Bus Barn. The RTA also noted advised that all responses were due by March 9, 2000.

On March 2, 2000, Arabella received another letter from Whole Foods wherein Whole Foods confirmed the financial terms of its agreement with Arabella and acknowledged that Arabella's "response to the RFP will be predicated on [Whole Foods'] commitment to the basic terms and that [Arabella Bus Barn Group] anticipate[s] filing that response on March 9, 2000." . Whole Foods also stated that it "look[ed] forward to working hand-in-hand with [the Arabella Bus Barn Group] through the various public approvals process and to deliver the finest food store in New Orleans." Plaintiff's Petition, ¶ 23.

On March 9, 2000, Arabella submitted its proposal, with Whole Foods as its anchor tenant, to the RTA. The Sarpy Group and three other developers also submitted plans. The original Sarpy plan did not include a grocery store because it believed that such a high volume tenant should be avoided. Plaintiff's Petition ¶ 25.

On or about June 2, 2000, RTA notified Arabella that the Sarpy Group's proposal had

received the highest ranking. However, the RTA also advised Arabella that it had "been given the second best score" and commented that "if it is determined that [the Sarpy Group] is deficient in any manner, or the negotiations are unsuccessful, [Arabella Bus Barn Group] shall be notified and a meeting will be scheduled." Plaintiff's Petition, ¶27. On July 24, 2000, the RTA Board of Commissioners authorized the Chairman of the Board to accept the Sarpy Group's proposal.

Some time after the Sarpy Group received notice that its proposal had been accepted by the RTA, it contacted Whole Foods to discuss whether it was interested in leasing space in the Bus Barn property. At that time, Whole Foods declined to enter into negotiation with the Sarpy Group.[2]

On August 2, 2000, Whole Foods sent Arabella a letter thanking Roger Ogden for his "ongoing work" and reiterating its "intention to work solely with [Arabella] for the development of the historic [Bus Barn]." Plaintiff's Petition, ¶30.

However, in October 2000, Whole Foods requested release from the exclusivity agreement with Arabella so that it could enter into negotiations with the Sarpy Group. Plaintiffs reluctantly agreed to release Whole Foods from the exclusivity agreement subject to an agreement on a release fee. An agreement as to the proper amount of the release fee was never reached between plaintiffs and Whole Foods. Plaintiff's Petition ¶¶ 33-40. Regardless, Whole Foods contacted the Sarpy Group about the redevelopment of the Bus Barn property, and, thereafter, entered into negotiations with them.[3] On or about May 4, 2001, Whole Foods entered into a lease for space at the Bus Barn. The Sarpy Group closed on the Bus Barn project on November 30, 2001.

---

[2] Affidavit of Neal Hixon (Feb. 5, 2002) at ¶ 4, attached as Exhibit 2 to Defendants' Memorandum ("Sometime after receiving [the RTA] letter, I called Whole Foods to discuss the Bus Barn development, but the Whole Foods representative declined . . .").

[3] Affidavit of Neal Hixon (Feb. 5, 2002) at ¶ 5.

On November 20, 2001, Arabella filed a Petition for Damages in the Civil District Court for Orleans Parish, Louisiana asserting claims against Whole Foods and the Sarpy Group. As to Whole Foods, plaintiffs contended that they should be held liable for: breach of contract, detrimental reliance, unfair trade practices, and unjust enrichment. As to the Sarpy Group, plaintiffs alleged that they should be held liable for unfair trade practices, interference with contractual relations, and unjust enrichment.

As noted above, defendants thereafter filed a notice of removal transferring the case to this Court and plaintiffs presently urge this Court to remand the matter to state court. Specifically, Arabella contends that removal to federal court is improper because there is incomplete diversity between plaintiffs and the Sarpy defendants as they are all residents of Louisiana. Defendants, however, contend that this Court may properly exercise jurisdiction over this matter because the Sarpy defendants were fraudulently joined in this suit solely to defeat diversity jurisdiction.

Analysis

*Fraudulent Joinder Standard*

To establish that a non-diverse defendant has been fraudulently joined, the removing party must show that there is: (1) no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court or (2) outright fraud in the plaintiff's pleadings of jurisdictional facts. *See B. Inc. v. Miller Brewing Co.*, 663 F.2d 545 (*citing Keating v. Shell Chemical Co.*, 610 F.2d 328, 331-32 (5th Cir. 1980)). In the case at bar, the defendants have alleged that there is no possibility that Arabella can establish a cause of action against the non-diverse defendants -- the Sarpy Group.

The standard employed to determine whether a defendant has been fraudulently joined is well

established in the Fifth Circuit. As was previously articulated by this Court:

> The burden is on the defendant, as the moving party, to prove that jurisdiction exists for removal purposes. *See Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir. 1992); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981). Where there have been allegations of "fraudulent joinder", it is clear that the burden is on the removing party to prove the alleged "fraud". *See id.* The burden of persuasion placed upon those who "cry fraudulent joinder" is indeed a heavy one. *See id.; In re Gas Water Heater Prods. Liability Litigation,* No. Civ. A. 96-2484, 1996 WL 732525, at *1 (E.D. La. Dec. 12, 1996) (Duval, J.).

In evaluating fraudulent joinder claims, the Fifth Circuit has adopted a summary judgment-like procedure, permitting the Court to "pierce the pleadings" and consider evidence outside the pleadings, such as affidavits and depositions accompanying the notice of removal or the motion to remand, as well as the controlling state law. *See Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir. 1995); *Ford,* 32 F.3d. at 935; *Carriere,* 893 F.2d at 100; *In re Gas Water Heater Prods. Liability Litigation,* 1996 WL 732525, at *1. Furthermore, all disputed questions of fact and ambiguities in the controlling state law are resolved in favor of the nonmoving party. *See id.; Dodson,* 951 F.2d at 42. However, "the mere assertion of metaphysical doubt" as to material facts is insufficient to create an issue if there is no basis for those facts; *Sullivan v. Gen-Corp., Inc.,* No. Civ. A. 95-709, 1995 WL 3217432.

In the case at bar, then, this Court must remand the case to state court if it finds that there is any possibility Arabella may establish a cause of action against the Sarpy defendants. After reviewing the memoranda and relevant law and resolving all disputed questions of fact and ambiguities in the controlling state law in favor of plaintiff, this Court finds that, there is a possibility that Arabella may successfully prove a cause of action under LUTPA against the non-diverse defendants - the Sarpy Group.

*Louisiana Unfair Trade Practices and Consumer Protection Law*

The Louisiana Unfair Trade Practices and Consumer Protection Law, ("the Act" or "LUTPA"), La. Rev. Stat. Ann. §§ 51:1405, 1409, provides a private cause of action for any person who suffers damage as a result of unfair or deceptive acts or practices in the conduct of any trade or commerce. A trade practice is deemed unfair "when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and consumers include business competitors." A trade practice is "deceptive" when it amounts to "fraud, deceit, or misrepresentation." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994); *Roustabouts, Inc. v. Hamer*, 447 So. 2d 543, 548 (La. App. 1st Cir. 1984), and *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 763 (La. App. 2d Cir. 1993). Additionally, any actions alleged to be in violation of LUTPA must have been taken with the specific purpose of harming competition. *SDT Indus., Inc. v. Leeper*, 793 So.2d 327, 333 (La. App. 2d Cir. 2001).

However, the statute does not prohibit "sound business practices, the exercise of permissible business judgment, or appropriate free enterprises transactions." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). As the Fifth Circuit explained, "[b]usinesses in Louisiana are still free to pursue profits, even at the expense of competitors, so long as the means used are not egregious." *Id.*

If a plaintiff successfully demonstrates an unfair or deceptive trade practice, he or she is entitled to "actual damages" in an amount equal to his or her loss stemming from the unfair or deceptive act. La. Rev. Stat. Ann. § 51:1409 (West 2002).

Because the definition of "unfair or deceptive act or practice" is broad and subjective, courts have been given the province of determining, on a case-by-case basis, what constitutes unfair

competition or an unfair trade practice. *Walker v. Louisiana Health Management Company*, 666 So.2d 415, 421 (La. App. 1 Cir. 12/15/95), *Wyatt v. PO2, Inc.*, 651 So. 2d 359 (La. App. 2 Cir. 3/1/95), *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316 11 F.3d at 1332; *Roustabouts, Inc. v. Hamer*, 447 So. 2d 543, 548 (La App. 1st Cir. 1984). As the court noted in *Capitol House Preservation Company, L.L.C., v. Perryman Consultants, Inc.*, 725 So.2d 523, 529 (La. App. 1 Cir. 12/10/98),

> [T]he language of [Section 1405(A)] tracks closely that of the Federal statute, 15 U.S.C. Section 45(a). Because of the variety of possible unfair and deceptive practices, the Federal statute was intentionally broadly written, leaving the determination of individual violations to the Commission and the courts. Our legislature has expressed a similar intention in patterning out law so closely on the Federal statute.

*Quoting Strahan v. State, Dept. of Agriculture and Forestry*, 645 So.2d 1162, (La. App. 1 Cir. 8/25/94).

In the case at bar, plaintiffs argue that the actions of the Sarpy Group and Whole Foods were intended to economically injure Arabella and were in violation of the provisions of LUTPA. Specifically, plaintiffs allege that the Sarpy Group employed unfair methods of competition and unfair or deceptive acts or practices by (i) contracting with Arabella's anchor tenant, Whole Foods, with knowledge and in violation of the exclusivity agreement in effect between plaintiffs and Whole Foods, (ii) adopting Arabella's ideas and work product as their own, (iii) revamping its proposal to the RTA after its original submission to include Whole Foods and to take advantage of the extensive planning that Arabella and Whole Foods had already performed, (iv) misappropriating and using Arabella's marketing materials, which had been prepared exclusively for Arabella, without authorization, and (v) conspiring to economically injure their main competitor, Arabella. Plaintiffs'

Memorandum in Support of Remand, p. 11.

Furthermore, Arabella argues that but for the actions of Whole Foods and the Sarpy Group, it would have eventually received the Bus Barn project based on the "blatant deficiencies" in the Sarpy proposal and Arabella's rating as the second best proposal. Plaintiffs conclude that the Sarpy proposal was deficient because: (1) the project did not close until November 30, 2001 -- over a year after Whole Foods and the Sarpy Group began their discussions and over six months after they entered into their lease agreement and (2) by the time the project closed, the Sarpy Group had "transformed" their bid into one that was "practically identical" to the one previously submitted by Arabella.

It is defendant's position, however, that plaintiffs cannot establish a cause of action against the Sarpy Group under LUTPA. Generally, defendants maintain that the actions of the Sarpy Group and Whole Foods were not "fraudulent" or "deceptive" and note that LUTPA does not prohibit sound business practices, businesses are free to pursue available business opportunities "even at the expense of competitors." *Turner v. Purina Mills, Inc.,* 989 F.2d 1420, 1422 (5th Cir. 1993); *SDT Indus., Inc. v. Leeper,* 793 So.2d 327, 333 (La. App. 2d Cir. 2001); *Inka's Schoolware v. School Time, L.L.C.,* 725 So. 2d 496 (La. App. 1st Cir. 1998).

Specifically, defendants argue that the Sarpy Group: (1) did not enter into negotiations with Whole Foods until well after the RTA rejected Arabella's proposal for the Bus Barn redevelopment, (2) did not employ deceptive or fraudulent techniques during its negotiations, (3) did not use any of Arabella's work, such as marketing plans or architectural and engineering drawings in drafting or

revising the proposal.[4] Defendants argue that what plaintiffs characterize as "wrongfully appropriated work" was nothing more than the Sarpy Group's idea of including a Whole Foods store in the Bus Barn redevelopment-- an "idea" clearly within the public domain and contend that the Sarpy Group's use of Arabella's marketing materials was appropriate under the law. Defendants' Surreply Memorandum at 7 n.3. Finally, defendants maintain that any injury sustained by plaintiffs was solely the result of the RTA rejecting their proposal and has no bearing on whether the Sarpy Group violated LUTPA by negotiating with Whole Foods.

*Conclusion*

As noted above, "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to be decided on a case-by-case basis." *Walker v. Louisiana Health Management Company*, 666 So.2d 415, 421 (La. App. 1 Cir. 12/15/95), *Wyatt v. PO2, Inc.*, 651 So. 2d 359 (La. App. 2 Cir. 3/1/95), *Omnitech*, 11 F.3d at 1332; *Roustabouts, Inc. v. Hamer*, 447 So. 2d 543, 548 (La App. 1st Cir. 1984). With this directive in mind, the Court finds that Arabella has alleged sufficient facts to conclude that there is a possibility that it would be able to establish a cause of action against the Sarpy Group (the non-diverse defendant) under LUTPA in state court. For example, defendant's alleged misappropriation of Arabella's marketing materials, negotiations with Whole Foods in violation of the exclusivity agreement, and conspiracy to economically injure their main competitor, Arabella, could all be characterized as "unfair," "deceptive," "unscrupulous" business

---

[4] Compare the affidavit of Jonathan Fawer (Plaintiff's Reply in Support of Remand, Ex. 5), which states that he never provided the Sarpy Group with any information or marketing materials, with the affidavits of Neal Hixon and Chris Sarpy (Opposition to Remand, Ex. 3), alleging that Jonathan Fawer gave the Sarpy Group permission to use a brochure containing photographs and public demographic information of the area surrounding the Bus Barn attached.

practices in violation of the Act.[5] With the possibility of success on their LUTPA claim, this Court concludes that Arabella did not fraudulently join the Sarpy Group in this matter. Furthermore, because plaintiffs may prevail on their LUTPA claim in state court, the Court need not discuss the propriety of plaintiff's unjust enrichment or breach of contract claims against the Sarpy Group.

Accordingly,

**IT IS ORDERED THAT** this cause of action shall be **REMANDED** to the Orleans Civil District Court pursuant to 28 U.S.C. §1447(c) for further proceedings.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Dismiss (rec. doc. 3) is rendered **MOOT** by the Court's remand of this case to state court.

---

[5] See, for example, *Smith v. Intex Recreation Co.*, 775 F.Supp. 712 (M.D. La. 1991)(holding there was sufficient evidence to establish an "unfair trade practice" when plaintiff contended that defendant had misappropriated information and marketed and sold a product as its own, where the product had been originally designed by plaintiff).